1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           NORTHERN DISTRICT OF CALIFORNIA

10

11   CHARLES E. WARD, ET AL.,                    No. C-13-01735 DMR

12            Plaintiff(s),                      **ORDER GRANTING WELLS FARGO'S
                                                 MOTION TO DISMISS [DOCKET NO.
13        v.                                     8]; GRANTING ERIN ROTHFUSS'
                                                 MOTION TO DISMISS [DOCKET NO.
14   GREGORY ALAN PICKETT, ET AL.,               16]; GRANTING IN PART
                                                 DEFENDANTS PICKETTS AND
15            Defendant(s).                       WHITE'S MOTION TO DISMISS
                                                 [DOCKET NO. 30]; AND DENYING AS
16   _____/           MOOT PLAINTIFFS' MOTION TO
                                                 FILE AMENDED COMPLAINT
17                                               [DOCKET NO. 46]**

18

19        Before the court are three motions to dismiss pursuant to Federal Rule of Civil Procedure

20   12(b)(6) filed by (1) Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or the "lender")[1] ["Wells

21   Fargo MTD," Docket No. 8], (2) Defendant Erin Rothfuss ["Rothfuss MTD," Docket No. 16], and

22   (3) Defendants Gregory Alan Pickett, Penny Jane Pickett, and Bobbie White ["Pickett MTD,"

23   _____

24        [1] Wells Fargo is successor by merger to Wells Fargo Southwest, N.A., formerly known as
     Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB, which was improperly sued
25   as "Wachovia National Bank." *See* Request for Judicial Notice ("RJN") [Docket No. 9] Exs. C, D, and
     E. The court grants Wells Fargo's request for judicial notice of Exhibits C, D, and E because they are
26   copies of documents reflecting official acts of the legislative and executive departments of the United
     States and their authenticity is capable of accurate and ready determination by resort to sources whose
27   accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Plaintiffs did not object to the
     request for judicial notice or dispute the accuracy of the attached documents. The Complaint refers to
28   this entity as "Defendant Wachovia," "Lender," and "Defendant Lender." *See, e.g.*, Complaint [Docket
     No. 1] at ¶¶ 5, 25-27.

United States District Court
For the Northern District of California

1    Docket No. 30].  For the reasons stated below, the Wells Fargo MTD is granted, the Rothfuss MTD

2    is granted, and the Pickett MTD is granted in part and denied in part.

3         After the three motions to dismiss had been fully briefed, Plaintiffs filed a motion for leave

4    to file an amended complaint.  [Docket No. 46.]  A hearing was held on the three motions to dismiss

5    and the motion for leave to file an amended complaint on September 26, 2013.  For the reasons

6    stated at the hearing, the motion for leave to file an amended complaint is denied as moot.  Plaintiffs

7    are granted leave to amend the complaint in accordance with this order.

8                                        **I. BACKGROUND**

9         Plaintiffs Charles E. Ward and Linda S. Ward ("Plaintiffs") are individuals residing in Texas.

10   Complaint at ¶ 1.  Plaintiffs filed this lawsuit alleging that Defendants engaged in alleged acts of

11   fraud and deceit, culminating in the loss of Plaintiffs' home, which was located at 70 Holiday Drive

12   in Alamo, California (the "Property").  Complaint at ¶ 13.

13        In October of 2007, Plaintiffs borrowed $1,866,000 from World Savings Bank, FSB, secured

14   by the Property.  RJN Ex. A, B.[2]  In June of 2008, the lender, then under the name of Wachovia

15   Mortgage, recorded a Notice of Default indicating that Plaintiffs had defaulted on their loan

16   payments on January 1, 2008.  RJN Ex. G.  A Notice of Trustee's Sale was recorded on October 14,

17   2008.  RJN Ex. H.  The Notice of Default was rescinded on November 5, 2008.  RJN Ex. I.

18        Plaintiffs claim that they fell behind on mortgage payments "in early 2010."  Complaint at ¶

19   14.  However, Wells Fargo recorded a second Notice of Default on July 13, 2009 indicating that

20   Plaintiffs had been in default since April 1, 2009.  RJN Ex. J.  A Notice of Trustee's Sale was

21

22

---

23        [2] The court grants Wells Fargo's unopposed request for judicial notice of Exhibit A (Adjustable
24   Rate Mortgage Note dated October 4, 2007) because it is a copy of a document referenced in the
     complaint whose authenticity no party questions.  The court also grants Wells Fargo's unopposed
25   request for judicial notice of Exhibits B (Deed of Trust dated October 12, 2007), F (Short Form Deed
     of Trust), G (Notice of Default recorded June 10, 2008), H (Notice of Trustee's Sale recorded on
26   October 14, 2008), I (Notice of Rescission of Default dated November 10, 2008), J (Notice of Default
     and Election to Sell Under Deed of Trust recorded July 13, 2009), and K (Notice of Trustee's Sale
27   recorded October 13, 2009) because they are true and correct copies of the official public records of the
     Contra Costa County Recorder's Office.  The authenticity of each of these documents is capable of
28   accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
     *See* Fed. R. Evid. 201(b).

1   recorded on October 13, 2009, indicating a foreclosure sale date of November 6, 2009 and listing the

2   total amount outstanding on the loan as $1,995,662.  RJN Ex. K.

3         Around early 2010, Charles Ward and his son Troy Ward began communicating with

4   Charles' neighbor, Gregory Pickett, and Pickett's assistant, Bobbie White, about the possibility of

5   Gregory Pickett and Penny Jane Pickett (the "Picketts") purchasing the Property for their son, Mike

6   Pickett.  Complaint at ¶¶ 14-15.  The Picketts proposed buying the Property for $5,000,000.  *Id.* at ¶

7   15.  White came to the Property twice to discuss terms with the Plaintiffs on the Picketts' behalf, and

8   on at least one occasion, she had the Picketts' lawyer, Rothfuss, participate via speakerphone in

9   negotiating terms of the purchase agreement with Plaintiffs on the Pickett s' behalf.  *Id.*

10        On April 19, 2010, Gregory Pickett, White, Charles Ward, Mike Pickett, and Troy Ward all

11  participated in a meeting to discuss the transaction.  Charles Ward raised to Gregory Pickett his

12  concern about Plaintiffs' lender possibly foreclosing on the Property.  Gregory Pickett reassured

13  Charles Ward that he had nothing to worry about regarding the possibility of foreclosure and that

14  White was "on top of everything."  Gregory Pickett also stated, "Trust me, I'll take care of this," and

15  "This is a done deal."  Charles Ward asked if he should bring the loan current and reinstate it for

16  purposes of selling the Pickett Defendants the property until the agreement.  Gregory Pickett again

17  told Charles Ward not to worry, that White had contacted the lender, and was taking care of

18  everything.  Gregory Pickett stated that he would allow Plaintiffs to live rent free in the home for a

19  year after the sale was completed, or longer if Plaintiffs needed more time.  Gregory Pickett

20  concluded the meeting by stating to Charles Ward that White would get Plaintiffs the final purchase

21  contract right away.  *Id.* at ¶¶ 17-19.

22        On April 21, 2010, White brought over a Purchase and Sale Agreement for the Property

23  ("Purchase Agreement") that Rothfuss had drafted or caused to be drafted.  Linda Ward again

24  confirmed with White that Gregory Pickett had contacted Plaintiffs' lender to avoid the possibility

25  of foreclosure.  White responded that everything was being taken care of by Gregory Pickett's

26  attorneys (which Plaintiffs allege was a reference to Rothfuss) and that Plaintiffs had nothing to

27  worry about with regard to foreclosure of the Property.  Plaintiffs executed the Purchase Agreement

28  and returned it to White, who stated that she was on her way to meet the Picketts to get their

**United States District Court**

For the Northern District of California

signatures and that she would return later that afternoon to bring back the fully executed Purchase Agreement. *Id.* at ¶ 20. Plaintiffs allege that the Picketts perpetrated a deceitful conspiracy and instructed White to tell Plaintiffs that the Picketts would countersign the Purchase Agreement immediately after Plaintiffs had signed. *Id.* at ¶ 28.

On April 22, 2010, Troy Ward contacted Mike Pickett, who stated that his parents were signing the executed copies of the Purchase Agreement at that moment, and that he would bring the fully executed Purchase Agreement right over. *Id.* at ¶¶ 20-21. Shortly thereafter, a realtor knocked on the door of the Property and told Troy Ward that the Property was being sold at a foreclosure sale at that very moment. The realtor was on the phone with someone at the foreclosure sale. Troy Ward asked the realtor to inquire whether the person bidding on the Property at the courthouse was named Pickett. The realtor confirmed that it was. *Id.* at ¶ 22.

When Plaintiffs called White, she stated that she could no longer talk to Plaintiffs and directed them to the Picketts' lawyers. Plaintiffs attempted to speak directly to Penny Jane Pickett, but she would no longer speak to Plaintiffs. *Id.* at ¶ 23.

A Trustee's Deed Upon Sale is attached to the Complaint. It shows that on April 22, 2010, the Property was sold at auction to the Pickett Defendants for $1,803,200.01, which is $163,763.80 less than Plaintiffs owed on the promissory note. *Id.* at ¶ 24, Ex. B.

The Complaint brings eight California statutory and common law causes of action against all Defendants: (1) fraud, (2) fraudulent deceit, (3) constructive fraud, (4) civil conspiracy, (5) unjust enrichment, (6) quiet title, (7) slander of title, and (8) cancellation of instruments. In addition, Plaintiffs allege a cause of action for negligence against Wells Fargo and Rothfuss, and a cause of action against Wells Fargo for wrongful foreclosure.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal

theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

"[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689(citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires."  However, "[w]hen a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

### III.  DISCUSSION

In three separate motions, all Defendants move to dismiss Plaintiffs' Complaint in its entirety.

**A.  Claims Relating to Fraud**

United States District Court

For the Northern District of California

Plaintiffs' first, second, and third claims assert causes of action against all Defendants for fraud pursuant to California Civil Code § 1572 et seq., fraudulent deceit pursuant to California Civil Code §§ 1709-1710, and constructive fraud pursuant to California Civil Code § 1573.

"The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003) (citation omitted); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (citations omitted). *See also* Cal. Civ. Code § 1709 (defining fraudulent deceit: "one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.").  .

Constructive fraud consists of "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him." Cal. Civ. Code § 1573(1).  "Constructive fraud allows conduct insufficient to constitute actual fraud to be treated as such where the parties stand in a fiduciary relationship." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 981 (1997).  Thus, to state a claim for constructive fraud under California law, Plaintiffs must "allege (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a party's pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  However, heightened pleading standards apply to claims alleging fraud.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) demands that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations omitted).  "Averments of fraud must be accompanied by the 'who, what,

when, where, and how' of the misconduct charged." *Id.* (quotations omitted).  "A party alleging

fraud must set forth more than the neutral facts necessary to identify the transaction." *Id.*  "Where

fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud

are subject to Rule 9(b)'s heightened pleading standard." *Vess,* 317 F.3d at 1105.  "Any averments

which do not meet that standard should be disregarded, or stripped from the claim for failure to

satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (quotations omitted).

### i) Fraud and Fraudulent Deceit By Wells Fargo

Plaintiffs make few allegations against Wells Fargo.  Plaintiffs allege that Wells Fargo's

"acceptance of less than was due on the promissory note for the Property and repeated claims that

the other Defendants were in communication with Lender suggests that Lender or its agents

participated in the actions complained of herein, actively through the willful acts or omissions,

negligently, or through calculated ignorance, the net effect of which was that the other Defendants

were able to perpetrate the wrongful and fraudulent acts described herein."  Complaint at ¶ 25.  The

Complaint also alleges that Wells Fargo failed to conduct the foreclosure sale in accordance with the

requirements of California Civil Code §§ 2923.5 and 2932.5 and California Commercial Code §

3301 et seq., and furthermore did not have standing or authority to conduct the sale. *Id.* at ¶¶ 26-27,

33, 35, 37.

These allegations do not satisfy the heightened pleading standard under Rule 9(b).  They fail

to identify any Wells Fargo employee who made a false statement, what that person said or

concealed, when they said it, how, or what Plaintiffs did in reliance.  Although the Complaint

alleges that there were "repeated claims that the other Defendants were in communication with

Lender," those statements are attributed to Gregory Pickett and White, not to Wells Fargo.

Complaint at ¶¶ 17-20, 25.   The fact that Wells Fargo accepted $1,803,200.01 for the Property at the

foreclosure sale, or $163,763.80 less than Plaintiffs owed on the promissory note, does not support

the conclusion that Wells Fargo made a misrepresentation or had intent to deceive Plaintiffs; indeed,

under the facts pled, Wells Fargo would have recovered *all* of the debt if the Property had been sold

to the Picketts under the Purchase Agreement, so it is implausible that Wells Fargo would intend to

participate in a fraud that would leave it in a worse economic position.  Complaint Ex. B.  Finally,

**United States District Court**
For the Northern District of California

1    Plaintiffs make conclusory allegations that notice of the default and the foreclosure sale were

2    defective and that Wells Fargo did not have standing to conduct the foreclosure sale.  These do not

3    meet the particularity requirement for pleading fraud; indeed, as discussed below, these allegations

4    are too conclusory to support claims that do not require particularity, such as wrongful foreclosure.

5         At the hearing on this motion, in response to the court's specific inquiry, Plaintiffs' counsel

6    could not identify any additional facts or legal theories to support Plaintiffs' fraud claims against

7    Wells Fargo.  Therefore, amendment would be futile.  Accordingly, the causes of action for fraud

8    and fraudulent deceit against Wells Fargo are dismissed without leave to amend at this time.

9         **ii)  Constructive Fraud By Wells Fargo**

10        Plaintiffs fail to state a claim for constructive fraud because they have not alleged that Wells

11   Fargo gained any advantage by misleading Plaintiffs.  Indeed, as described above, Wells Fargo's

12   participation in the fraud alleged would have been disadvantageous to it.

13        Plaintiffs also have failed to allege any facts that support an argument that a fiduciary

14   relationship existed between Wells Fargo and Plaintiffs, as is required to state a claim for

15   constructive fraud.  "[B]anks ordinarily have limited duties to borrowers.  Absent special

16   circumstances, a loan does not establish a fiduciary relationship between a commercial bank and its

17   debtor."  *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 740, 112 Cal. Rptr. 3d 439, 450 (Cal. Ct.

18   App. 2010).  Indeed, Plaintiffs failed to respond to Wells Fargo's argument that no such fiduciary

19   relationship exist, and issues raised in a brief that are not supported by argument are deemed

20   abandoned.  *Ghahremani v. Gonzales,* 498 F.3d 993, 997 (9th Cir. 2007).  Accordingly, the

21   constructive fraud claim against Wells Fargo is dismissed without leave to amend.

22        **iii)  Fraud and Fraudulent Deceit By Erin Rothfuss**

23        The only allegations against Rothfuss are that "Defendant White came to the Property twice

24   to discuss terms with the Plaintiffs on the Pickett Defendants' behalf, and on at least one occasion,

25   she had the Pickett Defendants' lawyer, Defendant Rothfuss, on speakerphone negotiating terms of

26   the purchase agreement with the Plaintiffs on the Pickett Defendants' behalf."  Complaint at ¶ 15.

27   Plaintiffs make no allegations about what Rothfuss said during that conversation.  The Complaint

28

**United States District Court**
For the Northern District of California

1   also alleges that "Defendant Rothfuss drafted or caused to be drafted the Purchase Agreement," but

2   does not allege what misrepresentations Rothfuss made in doing so. *Id.* at ¶ 20.

3       Plaintiffs point to "additional allegations" against Rothfuss. First, they highlight allegations

4   that White told the Wards that Rothfuss was in direct communication with the lender regarding the

5   Wards' loan and the Wards did not need to worry about a foreclosure sale. Second, Plaintiffs argue

6   that "the Picketts never intended to enter into the Purchase Agreement, but used it and Ms. Rothfuss'

7   actions as a means to ensure that the Wards would take no steps to save their home from the

8   foreclosure sale. The Picketts' scheme could not have worked without Ms. Rothfuss. The Purchase

9   Agreement is the false representation at the heart of the fraudulent conduct in this case. These

10  misleading and deceptive acts evidence Ms. Rothfuss' willful participation in the alleged fraud."

11  Opp. to Rothfuss MTD [Docket No. 31] at 4. However, both of these events involve conduct

12  committed by people *other* than Rothfuss. Plaintiffs' statement that the conduct of others evidences

13  Rothfuss' willful participation in the alleged fraud is merely conclusory.

14      Plaintiffs' have not pled with particularity the conduct committed by Rothfuss that could

15  support a claim of fraud, nor have they alleged that Rothfuss was aware of any statement's falsity, or

16  that she intended to defraud Plaintiffs. Accordingly, Plaintiffs fail to state causes of action for fraud

17  and fraudulent deceit against Rothfuss. These claims are dismissed without leave to amend because

18  at the hearing on this motion, in response to the court's specific inquiry, Plaintiffs' counsel could not

19  identify any additional facts or legal theories to support any of Plaintiffs' claims against Rothfuss.

20      **iv) Constructive Fraud By Rothfuss**

21      Plaintiffs also fail to state a cause of action for constructive fraud against Rothfuss. Plaintiffs

22  allege a single contact between Rothfuss and Plaintiffs: a phone call in which Rothfuss was on

23  speakerphone acting "*on the Pickett Defendants' behalf.*" Compl. ¶ 15 (emphasis added). The

24  Complaint does not support a conclusion that a fiduciary or confidential relationship existed between

25  Plaintiffs and Rothfuss.

26      Plaintiffs make an additional argument not alleged in the complaint: that an implied attorney-

27  client relationship was created because they reasonably believed that Rothfuss represented their

28  interests and thereby served as their counsel. However, "an attorney has no duty to protect the

**United States District Court**
For the Northern District of California

1   interests of an adverse party for the obvious reasons that the adverse party is not the intended

2   beneficiary of the attorney's services, and that the attorney's undivided loyalty belongs to the

3   client." *Fox*, 181 Cal. App. 3d at 961 (no attorney-client relationship formed between plaintiffs and

4   attorney who had represented an adverse party in a real estate transaction).  Plaintiffs' "states of

5   mind, unless reasonably induced by representations or conduct of respondent, are not sufficient to

6   create the attorney-client relationship; they cannot establish it unilaterally." *Fox v. Pollack*, 181 Cal.

7   App. 3d 954, 959, 226 Cal. Rptr. 532 (Cal. Ct. App. 1986).  Instead, in considering whether an

8   attorney-client relationship has reached a point where a fiduciary relationship exists, the "primary

9   concern is whether and to what extent the attorney acquired confidential information." *People ex*

10  *rel. Dep't of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1147-49 (1999).

11          There are no allegations that Plaintiffs retained Rothfuss or that she provided them with any

12  legal advice.  There are no allegations that Plaintiffs revealed material confidential information to

13  Rothfuss.  The Complaint is clear that any communications between Plaintiffs and Rothfuss were for

14  the purpose of seeking to advance the sale of the Property to Rothfuss' clients.  Accordingly, the

15  constructive fraud claim against Rothfuss is dismissed without leave to amend.

16          **v)  Fraud and Fraudulent Deceit By Penny Jane Pickett**

17          Penny Jane Pickett argues that the single allegation against her is an insufficient basis for any

18  of the fraud claims.  The Complaint does not allege that Penny Jane Pickett communicated with

19  Plaintiffs at any time during the negotiation of the Purchase Agreement or potential sale of the

20  Property, nor does it allege that she was present at the April 19, 2010 meeting.  The only specific

21  appearance she makes in the Complaint is the allegation that after the foreclosure sale, she "would

22  no longer speak to the Plaintiffs."  Complaint at ¶ 23.  The Complaint also alleges that she

23  participated in the fraudulent conspiracy, but the allegation is conclusory.  *See* Complaint at ¶ 28

24  ("In order to perpetrate this deceitful conspiracy, the Pickett Defendants instructed Defendant White

25  to tell the Plaintiffs that they would countersign [the Purchase Agreement].").  Plaintiffs also argue

26  (in their Opposition to the Pickett MTD, at 7, not in the Complaint) that they had "extensive and

27  longstanding familial connections" with Penny Jane Pickett, but do not argue why such connections

28  should be the basis of liability.

United States District Court

For the Northern District of California

"[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Id.* (quotation omitted). "On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* (quotations omitted). With respect to Penny Jane Pickett, the Complaint patently fails to comply with Rule 9(b). The specific allegation against her is not actionable, while the general allegations fail to identify her role in the alleged fraud and any actions she took to participate in it.

Plaintiffs also argue that because Penny Jane Pickett is listed as a co-owner of the Property, and the claims asserted implicate her and Gregory Pickett's title rights, Penny Jane Pickett must be joined as a required party pursuant to Federal Rule of Civil Procedure 19(a). *See* Fed. R. Civ. P. 19(a)(1) (person "must be joined as a party if . . . (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest."). Even assuming that her interest in the title to the Property makes her a "required party," Rule 19 is usually asserted by *defendants* in an action via a motion under Federal Rule of Civil Procedure 12(b)(7) to dismiss for failure to join a required party, and Plaintiffs point to no cases demonstrating that required parties who have *already been joined* in a complaint may not subsequently move to dismiss on the basis that the complaint lacks sufficient allegations to state claims against the required party.

At the hearing on this motion, in response to the court's specific inquiry, Plaintiffs' counsel could not identify any additional facts or legal theories to support any of Plaintiffs' claims against Penny Jane Pickett. Accordingly, the three fraud causes of action are dismissed as to Penny Jane Pickett without leave to amend.

United States District Court

For the Northern District of California

**vi)  Fraud and Fraudulent Deceit By Gregory Pickett and White**

In contrast with the few allegations pleaded against Wells Fargo, Rothfuss and Penny Jane Pickett, the fraud allegations made against Gregory Pickett and White are detailed and numerous. As described above, Plaintiffs allege that Gregory Pickett and White knowingly misrepresented to Plaintiffs that they would communicate with Plaintiffs' lender regarding the impending foreclosure sale on the Property with the intent to defraud Plaintiffs.  Gregory Pickett and White do not argue that the misrepresentation, scienter, and intent elements of the fraud claims are inadequately pleaded.  Instead, their argument focuses on the justifiable reliance and damages elements of the fraud claims.

To establish the justifiable reliance element of fraud, a plaintiff asserting fraud by misrepresentation must plead "(1) that they actually relied on the defendant's misrepresentations, and (2) that they were reasonable in doing so."  *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 863, 68 Cal. Rptr. 3d 828, 855 (Cal. Ct. App. 2007) (citations omitted). "Actual reliance," the first prong of this element, requires the plaintiff to "establish a complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom."  *Id.* at 864 (citations omitted).  Gregory Pickett and White's briefs focus exclusively actual reliance, and do not address the second prong.

Plaintiffs allege that but for Defendants' misrepresentations, Plaintiffs would have exercised their "options to reinstate the loan in default or to obtain another buyer, both of which were well within the Wards' capabilities based upon the amount of equity in the Property and the balance of the loan."  Complaint at ¶ 33.  Gregory Pickett and White contend that Plaintiffs cannot show actual reliance because the foreclosure was inevitable by the time the misrepresentations were made.  First, they argue that Plaintiffs could not have reinstated the loan because the deadline to do so expired before the alleged fraud happened.  California law permits a borrower to reinstate a defaulted loan only up until five business days before the foreclosure sale. Cal. Civ. Code § 2924c(e).  The foreclosure sale was held on April 22, 2010; five business days prior to that date is April 15, 2010. They contend that because the alleged misrepresentations occurred on April 19, 2010, *after* April 15, they cannot be said to have caused Plaintiffs to forebear their option of reinstating the loan.  Second,

United States District Court

For the Northern District of California

they contend that it is implausible that Plaintiffs could have found another buyer and sold the property in the three day window between the alleged misrepresentations and the foreclosure sale.

Both of these arguments presume that the fraudulent misrepresentations did not occur before April 19, 2010. While the Complaint alleges that Gregory Pickett and White made misrepresentations at and after the sit-down negotiation for the terms of the Purchase Agreement that occurred on April 19, 2010, it also alleges that discussions between Charles Ward, Gregory Pickett, and White began "in early 2010." Complaint at ¶¶ 14-15. At these earlier discussions, Gregory Pickett and White proposed that the Picketts would buy the Property for $5,000,000 even though, according to Plaintiffs, the Picketts apparently had no intention to do so. *Id.* at ¶¶ 15, 23-24, 28. Plaintiffs' allegation that, but for Defendants' misrepresentations, they would have had options to reinstate the loan or obtain another buyer are plausible; even Wells Fargo avers that Plaintiffs were able to negotiate with Wells Fargo on at least two previous occasions to cancel or postpone the foreclosure sale. *See* Wells Fargo MTD at 2 (Plaintiffs cured the default referenced in the Notice of Default dated June 10, 2008 and negotiated with Wells Fargo to postpone the foreclosure sale resulting from the Notice of Default dated July 13, 2009); RJN Ex. L.[3] Plaintiffs have thus sufficiently alleged actual reliance and damages. Gregory Pickett and White raise no other arguments with respect to the sufficiency of the fraud and fraudulent deceit claims.[4] Therefore, their motion to dismiss these claims is denied.

**vii) Constructive Fraud By the Pickett Defendants and White**

---

[3]   Wells Fargo requested that this court take judicial notice of Exhibit L, which is "a letter agreement dated November 5, 2009, and signed by plaintiffs confirming to forbear foreclosure activities until December 7, 2009." RJN at 3 ¶ 12. The court declines to take judicial notice of this document because Wells Fargo has not laid the foundation for its authenticity.

[4]   Defendants also argue that the Purchase Agreement gave *Plaintiffs* the exclusive power to negotiate with the lender with regard to the cancellation or postponement of the foreclosure sale, and also that in the event that Plaintiffs have "not postponed or cancelled the Foreclosure Sale . . .at least two (2) days before the date of the Foreclosure Sale, the Buyer shall have the sole right to terminate this Agreement at any time thereafter, and neither party shall have any liability hereunder . . . and shall further have the right to acquire the Property at the Foreclosure Sale." Complaint Ex. A at § 27. This argument has no bearing on the motions to dismiss because (1) the Complaint alleges that the parties did not enter into the Purchase Agreement, and so are not bound to its terms, and (2) to the extent that the terms of the Purchase Agreement might be used to demonstrate the parties' intentions, that is an issue of fact not to be determined at this stage in the litigation.

**United States District Court**
For the Northern District of California

With respect to constructive fraud, the Pickett Defendants and White contend that the Complaint fails to sufficiently allege that a confidential or fiduciary relationship existed between Plaintiffs and them.  In response, Plaintiffs argue that Gregory Pickett was a "trusted neighbor stepping in to help when things got tough" and the Picketts and White made "affirmative representations to Mr. Ward that they and Ms. Rothfuss would prevent the foreclosure auction of the Ward's home."  Opp. to Picketts MTD [Docket No. 39] at 9-10.  Plaintiffs contend that "[t]hese actions, without more" created a confidential relationship such that the elements of constructive fraud have been adequately pled.  *Id.* at 9-10.  Alternatively, Plaintiffs argue that the Picketts and White exercised "undue influence" over Plaintiffs rising to the level of fraud, pursuant to California Civil Code § 1575.

These allegations, taken as true, are still insufficient to state a fiduciary relationship between Plaintiffs and the Pickett Defendants or White.  "[F]iduciary relationships arise out of certain canonical relationships that are legally defined and regulated . . . such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client, whereas a 'confidential relationship' may be founded on a moral, social, domestic, or merely personal relationship as well as on a legal relationship."  *Richelle L. v. Roman Catholic Archbishop of San Francisco,* 106 Cal. App. 4th 257, 270-72, 130 Cal. Rptr. 2d 601 (Cal. Ct. App. 2003) (citation omitted).  Plaintiffs cite no cases in which courts have found a fiduciary relationship to exist in the circumstances pled.

Nor have Plaintiffs sufficiently alleged a confidential relationship.  The essential elements of a confidential relationship are "1) [t]he vulnerability of one party to the other which 2) results in the empowerment of the stronger party by the weaker which 3) empowerment has been solicited or accepted by the stronger party and 4) prevents the weaker party from effectively protecting itself."  *Id.* at 272.  "The vulnerability that is the necessary predicate of a confidential relation, and which the law treats as absolutely essential usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity."  *Id.* at 273.  Nothing suggests that Plaintiffs were more vulnerable than the Pickett Defendants or White.

With respect to Plaintiffs' alternative argument, undue influence is a defense to breach of contract, not an element of a fraud claim.  *See* Cal. Civil Code § 1575 ("Undue influence consists . . .

United States District Court

For the Northern District of California

(2) In taking an unfair advantage of another's weakness of mind; or (3) In taking a grossly oppressive and unfair advantage of another's necessities or distress."); Civil Code § 1689(b)(1) ("A party to a contract may rescind the contract in the following cases: (1) If the consent of the party rescinding . . . was . . . obtained through . . . undue influence, exercised by or with the connivance of the party as to whom he rescinds."); *Olam v. Cong. Mortgage Co.*, 68 F. Supp. 2d 1110, 1140 (N.D. Cal. 1999) (undue influence asserted as a basis for rescission of the settlement agreement).  In any event, undue influence requires that one party exerted "the kind of influence or supremacy of one mind over another by which that other is prevented from acting according to his own wish or judgment, and whereby the will of the person is overborne and he is induced to do or forbear to do an act which he would not do, or would do, if left to act freely."  *Webb v. Saunders*, 79 Cal. App. 2d 863, 871, 181 P.2d 43 (Cal. Ct. App. 1947); *Olam*, 68 F. Supp. 2d at 114.  Again, the pleaded facts do not meet this standard.  The constructive fraud claims against the Pickett Defendants and White are dismissed.

**B.  Wrongful Foreclosure Claim**

Courts have power to vacate a foreclosure sale where there has been "fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties."  *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104, 134 Cal. Rptr. 3d 622 (Cal. Ct. App. 2011).  Plaintiffs' wrongful foreclosure claim alleges that Wells Fargo violated certain statutory provisions governing the foreclosure process:  California Civil Code § 2924g(c)(1), which requires the postponement of a foreclosure sale by mutual agreement; § 2924f and § 2924g, by not providing proper notice of the April 22, 2010 foreclosure sale; and § 2923.5,[5] which requires a mortgagee to contact the borrower by telephone to explore options for the borrower to avoid foreclosure and a notice of default stating the same.  Complaint at ¶¶ 45-47.  Plaintiffs therefore request that the court vacate the foreclosure sale.

---

[5] Plaintiffs apparently have abandoned their allegation that Wells Fargo violated Section 2923.5. *See* Opp. to Wells Fargo MTD [Docket No. 29] at 5 (Plaintiffs "do not seek to rely on Civil Code § 2923.5 to provide a cause of action against the Defendants.")

United States District Court

For the Northern District of California

### i.  Insufficiency of Allegations

"A nonjudicial foreclosure sale is accompanied by a common law presumption that it was conducted regularly and fairly. This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Kimball v. Flagstar Bank FSB*, 881 F. Supp. 2d 1209, 1225 (S.D. Cal. 2012) (quoting *Melendrez v. D & I Inv., Inc.*, 127 Cal. App. 4th 1238, 1258, 26 Cal. Rptr. 3d 413 (Cal. Ct. App. 2005).  In addition to this common law presumption, a statutory presumption as to the validity of a foreclosure is created where a trustee's deed that states that the sale complied with all statutory requirements.  Such a declaration "constitute[s] prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers."  Cal. Civ. Code § 2924(c).

The deed at issue in this case contains such a statement.  Complaint Ex. C (Trustee's Deed Upon Sale to Picketts stating that the Trustee "complied with all applicable statutory requirements"). The Complaint does not specify how Wells Fargo violated any laws governing foreclosure proceedings, and instead states in a conclusory fashion that it did.  These allegations, taken with the similarly conclusory and vague allegations about Wells Fargo's participation in a fraudulent scheme, fail to state a plausible theory that a "prejudicial procedural irregularity" occurred.

### ii.  Tender Rule

In addition, the wrongful foreclosure claim must be dismissed because Plaintiffs have not tendered, attempted to tender, or stated that it was capable of tendering the amount it owed Wells Fargo.  To state an equitable cause of action to set aside the foreclosure sale "where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties," a plaintiff must plead the following elements:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) *in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering*.

16

*Lona*, 202 Cal. App. 4th at 104 (emphasis added).  *See also Karlsen v. American Sav. & Loan Assn.*, 15 Cal. App. 3d 112, 117, 92 Cal. Rptr. 851 (Cal. Ct. App. 1971).  The application of the tender requirement prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." *Ngoc Nguyen v. Wells Fargo Bank*, 749 F. Supp. 2d 1022, 1034 (N.D. Cal. 2010).  "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." *Lona*, 202 Cal. App. 4th at 112 (brackets in original) (quotation omitted).  California district courts apply the tender rule in examining wrongful foreclosure claims.  *See, e.g., Ngoc Nguyen*, 749 F. Supp. 2d at 1034 (dismissing wrongful foreclosure and quiet title claims where plaintiffs failed to state an ability or willingness to tender the amount owed).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439, 129 Cal. Rptr. 2d 436 (Cal. Ct. App. 2003).  "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.*, 200 Cal. App. 3d 1154, 1165, 246 Cal. Rptr. 421 (Cal. Ct. App. 1988) ("An offer of partial payment is of no effect.") (internal quotations and emphasis omitted).  The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Id.*

Plaintiffs' Complaint and motion papers do not allege that Plaintiffs ever tendered or are able or willing to tender the amount of debt they owed to Wells Fargo.  Instead, Plaintiffs assert that the circumstances at hand fall under two exceptions to the tender requirement.

First, "a tender will not be required when the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary. In such cases, it is deemed that the tender and the counter claim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required." *Lona*, 202 Cal. App. 4th at 112-13.  Plaintiffs argue that the claims asserted against Wells Fargo in this lawsuit presents such counterclaims or offsets.  However, this exception

United States District Court

For the Northern District of California

appears to apply only to counterclaims or offsets that either are existing at the time of default or are more definitive than Plaintiffs' claims against Wells Fargo. *See, e.g.*, *Hauger v. Gates*, 42 Cal.2d 752, 755, 269 P.2d 609 (1954); *Birman v. Loeb*, 64 Cal. App. 4th 502, 518, 75 Cal. Rptr. 2d 294 (Cal. Ct. App. 1998) (no set-off found for defendants where defendants owed plaintiffs an enforceable debt, and plaintiffs owed defendants an unenforceable debt).

Second, "a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale." *Lona*, 202 Cal. App. 4th at 112-13. One scenario in which courts have not applied the tender requirement is where a foreclosure sale appears to be void at the outset. *See Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 969-71 (N.D. Cal. 2012); Miller & Starr California Real Estate 3d § 10:212. A sale that is deemed "void" means, "in its strictest sense [ ] that [it] has no force and effect," whereas one that is deemed "voidable" can be "avoided" or set aside as a matter of equity. *Little v. CFS Serv. Corp.,* 188 Cal. App. 3d 1354, 1358, 233 Cal. Rptr. 923 (Cal. Ct. App. 1987) (internal quotation marks omitted). In a voidable sale, tender is required "based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose." *Dimock v. Emerald Properties LLC,* 81 Cal. App. 4th 868, 878, 97 Cal. Rptr. 2d 255 (Cal. Ct. App. 2000). "That reasoning does not extend to a sale that is void *ab initio,* since the contract underlying such a transaction is a nullity with no force or effect as opposed to one which may be set aside in reliance on equity." *Barrionuevo*, 885 F. Supp. 2d at 970. "Where there has been a notice defect and no conclusive presumption language in the deed, the sale has been held void. In contrast, where there has been a notice defect and conclusive presumption language in a deed, courts have characterized the sales as 'voidable.'" *Tamburri v. Suntrust Mortgage, Inc.*, No. 11-cv-2899 EMC, 2011 WL 6294472 at *3 (N.D. Cal. Dec. 15, 2011) (citing to *Little*, 188 Cal. App. 3d at 1358).

In *Barrionuevo*, the court denied a motion to dismiss a wrongful foreclosure claim and found an exception to the tender requirement because the foreclosure sale was alleged to be void as opposed to merely voidable. Plaintiffs alleged that lender had securitized and sold a Deed of Trust that did not include the conclusive presumption language of regularity of sale. 855 F. Supp. 2d at

United States District Court

For the Northern District of California

970-71.   The language triggering the presumption of validity would have rendered the sale merely voidable, as opposed to void.  *Id.*  In *Dimock*, where an incorrect trustee had foreclosed on a property and conveyed it to a third party, the conveyed deed was not merely voidable but void, and tender was not required.  81 Cal. App. 4th at 878.  *See also Humboldt Sav. Bank v. McCleverty,* 161 Cal. 285, 291, 119 P. 82 (1911) (exception to the tender requirement on equitable grounds where foreclosure sale is alleged to be void as opposed to merely voidable).

Here, the Complaint alleges no facts to overcome the common law and statutory presumptions of the validity of the sale, and contains only conclusory allegations about Wells Fargo's statutory violations during the foreclosure proceedings.  The fact that the fraud and fraudulent deceit claims against Gregory Pickett and White survive the motion to dismiss is of no moment.  Plaintiffs have not cited any cases finding an exception to the tender requirement where an independent fraud occurring *outside* of the foreclosure proceedings (i.e. Gregory Pickett and White's fraudulent conspiracy to induce Plaintiffs to forbear their options to avoid foreclosure) causes otherwise lawful foreclosure proceedings to continue.

Accordingly, none of the exceptions of the tender requirement apply.  At oral argument, Plaintiffs represented that they could augment their pleadings to meet the tender requirement.  It is unclear whether Plaintiffs can cure the other insufficiencies in this claim.  Given that the court must freely give leave to amend when justice so requires, this claim is dismissed with leave to amend.[6]

## C.  Quiet Title Claim

Plaintiffs' seventh cause of action for quiet title is asserted against all Defendants.  "The purpose of a quiet title action 'is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein

---

[6]  Wells Fargo argues that the doctrine of laches bars Plaintiffs' cancellation of instruments claim, discussed below; the Pickett Defendants and White argue that laches bars not only the cancellation of instruments claim but also any claim to unwind the foreclosure sale.  However, when an action to set aside a foreclosure sale is "based on fraud, a fraudulent conspiracy or breach of statutory duty, the statute of limitations is three years from the date of the sale."  *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1195 (C.D. Cal. 2011) (*citing* 4 Miller & Starr, Cal. Real Estate § 10:210 (3d ed.2001)).  Defendants cite no cases within the last hundred years applying laches to bar claims to set aside a foreclosure sale or cancellation of instruments claims, and do not explain why the court should apply an equitable laches period shorter than the applicable statute of limitations.  Accordingly, the court declines at this point to find that the doctrine of laches bars any of the claims relating to title.

United States District Court

For the Northern District of California

1  as he may be entitled to.'" *Martinez v. America's Wholesale Lender,* No. 09-cv-5630 WHA, 2010

2  WL 934617 at *5 (N.D.Cal. Mar. 15, 2010) (quoting *Peterson v. Gibbs,* 147 Cal. 1, 5, 81 P. 121

3  (1905), *rev'd in part on other grounds,* 446 Fed. Appx. 940.

4        California Code of Civil Procedure § 761.020 sets forth the requirements for a quiet title

5  claim.  Specifically, this statute requires that Plaintiffs set forth five elements in a "verified

6  complaint"[7]: (1) a legal description and common designation of the property; (2) the title of the

7  plaintiff and its basis; (3) the adverse claims to the plaintiff's title; (4) the date as of which the

8  determination is sought; and (5) a prayer that title is quieted in the plaintiff. Cal. Civ. Proc. Code §

9  760.020(a)-(e).  *See Briosos v. Wells Fargo Bank*, No. 10-cv-2834 LB, 2011 WL 1740100 at *11

10  (N.D. Cal. May 5, 2011).

11        To bring a claim to quiet title, plaintiffs must show they "are the rightful owners of the

12  property, i.e., that they have satisfied their obligations under the Deed of Trust." *Kelley v. Mortgage

13  Elec. Registration Sys.,* 642 F.Supp.2d 1048, 1057 (N.D.Cal. 2009).  "It is settled in California that a

14  mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Briosos v.

15  Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1032 (N.D. Cal. 2010) (quoting *Shimpones v. Stickney,*

16  219 Cal. 637, 649 (1934)).  In addition, "the tender requirement applies to a quiet title action that

17  seeks to set aside a trustee's sale for irregularities in sale notice or procedure" except where the

18  foreclosure sale is void, as opposed to merely voidable. *Martinez v. America's Wholesale Lender*,

19  446 F. Appx. 940, 943 (9th Cir. 2011) (quotations omitted)); *see also Montoya v. Countrywide Bank*,

20  No. 09-cv-641 JW, 2009 WL 1813973 at *11-12 (N.D. Cal. June 25, 2009) ("Under California law,

21  the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of

22  action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment

23  of the debt" and applying tender rule to quiet title and wrongful foreclosure claims).

24        Plaintiffs' quiet title claim fails at the outset because Plaintiffs have failed to allege facts

25  supporting their allegation that they are the rightful owners of the Property.  Instead, they admit (and

26  the documents of which the court has taken judicial notice show) that they were in default. *See*

27

28       [7]  The Complaint was not verified.

1  *Tamburri*, 2011 WL 6294472 at * 15 ("The problem with Plaintiff's [quiet title] argument is that,

2  even if the proper party did not initiate foreclosure, Plaintiff does not allege that she is the rightful

3  owner as she admits that she is in default."). Furthermore, as discussed above, Plaintiffs do not

4  allege that they have attempted to tender the loan amount, have the ability to do so, or that such

5  equitable circumstances exist such that tender should not be required.

6          Second, Plaintiffs' allegations do not identify what "claims" Wells Fargo, Rothfuss, or White

7  have asserted against the Property.  In fact, Plaintiffs appear to have abandoned the quiet title claim

8  against these Defendants because Plaintiffs provide no argument in support of this claim as to

9  Rothfuss and White and only a conclusory statement about the sufficiency of its quiet title claim

10  against Wells Fargo.

11          Accordingly, the quiet title claim is dismissed without leave to amend as to Wells Fargo,

12  Rothfuss and White.  The claim is dismissed with leave to amend as to the Pickett Defendants.

13  **D.  Slander of Title Claim**

14          Plaintiffs' eighth cause of action asserts a slander of title claim against all Defendants.

15  "Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a

16  false statement that disparages title to property and causes the owner thereof some special pecuniary

17  loss or damage."  *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App.

18  4th 999, 1030, 141 Cal. Rptr. 3d 109, 135 (Cal. Ct. App. 2012).  The main thrust of the slander of

19  title cause of action is to protect property owners from injury to the salability of property by a false

20  publication that casts doubt upon the existence or extent of another's interest in the property.  *Id.*

21  The elements are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct

22  pecuniary loss, which is "ordinarily indicated by the loss of a particular sale, impaired marketability

23  or depreciation in value."  *Id.*  Implicit in a slander of title claim is the requirement for the plaintiff

24  to allege his ownership of the property.  *See* Witkin, Cal. Proc. 5th (2013 supp.) Pleadings § 749.

25          Plaintiffs have failed to sufficiently state the slander of title claim.  Because Plaintiffs admit

26  they were in default on the loan, they have insufficiently alleged their ownership of the property.

27  For the same reason, they have insufficiently alleged that any of the statements at issue in this case

28  are false.  *See Larmer v. Sierra Pac. Mortgage Co., Inc.*, No. 11-CV-569-RCJ-VPC, 2012 WL

United States District Court
For the Northern District of California

78195 at * 5 (D. Nev. Jan. 10, 2012) ("Plaintiff here does not deny she has defaulted under the note, and consequently the notice of default is not a false statement disparaging the title to the Property."). In addition, Plaintiffs' slander of title claim seeks to set aside the foreclosure sale, and as already noted, an allegation of tender is required, which plaintiffs have failed to make.

Furthermore, Plaintiffs base their slander of title claim on the recordation of the Notice of Defaults against the property, the Notices of Trustee's Sale, the Trustee's Deed Upon Sale, and the "Substitution of Trustee and Assignment of Deed of Trust."[8]  *See* Complaint at ¶¶ 55-58.  These documents—including their mailing, publication, and delivery as required by statute—constitute "privileged communications" pursuant to Cal. Civil Code § 47.  *See* Civ.Code § 2924(d)(1); *David v. GMAC Mortgage, LLC*, No. 11-cv-2914 PJH, 2011 WL 6100616 at *2 (N.D. Cal. Dec. 7, 2011), appeal dismissed (Feb. 16, 2012) ("Thus, no action based upon these protected documents may lie."); *Dodd v. Fed. Home Loan Mortgage Corp.*, No. 11-cv-1603 JAM, 2011 WL 6370032 at * 18 (E.D. Cal. Dec. 19, 2011) ("Plaintiff's slander of title claim also fails because he admits that he defaulted on his loan and since notices filed pursuant to a non-judicial foreclosure action constitute privileged communications. Cal. Civ.Code § 2924(d).").   Plaintiffs have not alleged that the malice exception to the statutory privilege applies.  *Permito v. Wells Fargo Bank, N.A.*, No. C-12-00545-YGR, 2012 WL 1380322 at *8 (N.D. Cal. Apr. 20, 2012) ("Absent factual allegations of malice, a trustee's performance of the statutory procedures in a nonjudicial foreclosure is subject to the qualified, common-interest privilege of California Civil Code § 47(c)(1).")) (citing *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008)).  In fact, Plaintiffs offered no response to Defendants' contention that the privilege applies.  Plaintiffs have thus abandoned any argument that they can overcome the privilege.

The slander of title claim is therefore dismissed without leave to amend.

**E.  Cancellation of Instruments Claim**

---

[8]  The court notes that Plaintiff did not allege either that the trustee was substituted or the Deed of Trust assigned, and did not otherwise allege that any Substitution of Trustee or Assignment of Deed of Trust exists.

**United States District Court**

For the Northern District of California

Plaintiffs' ninth cause of action asserts a cancellation of instruments claim against all Defendants. "The Court may order cancellation of an invalid written instrument that is void or voidable." *Compass Bank v. Petersen,* 886 F. Supp. 2d 1186, 1194 (C.D. Cal. 2012) (citing Cal. Civ. Code § 3412 *et seq*.). "In an action for rescission or cancellation of instruments, a complainant is required to do equity by restoring to the defendant any value the plaintiff received from the transaction. The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Kimball*, 881 F. Supp. 2d at 1225 (quoting *Fleming v. Kagan,* 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (Cal. Ct. App. 1961)). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen*, 15 Cal.App.3d at 117; *Kimball*, 881 F. Supp. 2d at 1225 (applying tender requirement to cause of action for cancellation of instruments pertaining to foreclosure process). As set forth above, Plaintiffs have inadequately pled tender as a necessary prerequisite to cancellation of the Trustee's Deed of Trust. Plaintiffs also appear to have abandoned this claim, as it provides no argument for its sufficiency except to contend that the doctrine of laches, discussed *supra* n. 4, should not preclude it. Accordingly, the cancellation of instruments claim is dismissed without leave to amend.

**C. Negligence**

Plaintiffs assert claims of negligence against Wells Fargo and Rothfuss. Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax,* 158 Cal. App. 4th 983, 994, 70 Cal. Rptr. 3d 519 (Cal. Ct. App. 2008)).

**i) Negligence as to Wells Fargo**

Plaintiffs claim that Wells Fargo had a duty to exercise reasonable care and skill to follow California law with regard to foreclosures, avoid any conflicts of interest in exercising their duties, act ethically, and refrain from taking any action against Plaintiffs that they did not have the legal

United States District Court

For the Northern District of California

1   authority or ethical right to do.  Complaint at ¶ 71.  Wells Fargo allegedly breached this duty by

2   failing to conduct the foreclosure sale in accordance with law, which resulted in a foreclosure sale at

3   which Wells Fargo accepted an offer for less than Plaintiffs' owed on the promissory note, and by

4   conspiring with the other Defendants to fraudulently deceive Plaintiffs into forbearing their other

5   options with respect to the loan.  *See id.* at ¶¶ 25-27.

6      "[A]s a general rule, a financial institution owes no duty of care to a borrower when the

7   institution's involvement in the loan transaction does not exceed the scope of its conventional role as

8   a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096,

9   283 Cal. Rptr. 53 (Cal. Ct. App. 1991) (lender acting within the scope of its conventional activities

10  owed no duty of care to the borrower in preparing an appraisal of the security for the loan).  Liability

11  to a borrower for negligence arises only under special circumstances, such as "when the lender

12  actively participates in the financed enterprise beyond the domain of the usual money lender."  *Id.*

13  (quotations omitted);  *Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994)

14  ("Under California law, a lender does not owe a borrower or third party any duties beyond those

15  expressed in the loan agreement, excepting those imposed due to special circumstance or a finding

16  that a joint venture exists.") (citing *Nymark*).  The test for determining whether a financial

17  institution owes a duty of care to a borrower-client "involves the balancing of various factors, among

18  which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the

19  foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the

20  closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral

21  blame attached to the defendant's conduct, and [6] the policy of preventing future harm."  *Id.* at

22  1098 (quotations omitted).

23      Stripped of conclusory allegations regarding Wells Fargo's participation in the fraud, what

24  remains are allegations that Wells Fargo's conduct in the foreclosure process violated the law.

25  Plaintiffs allege that Wells Fargo "failed to conduct the foreclosure sale of the Property in

26  accordance with the requirements of California Civil Code §§ 2923.5 and 2932.5[,] California

27  Commercial Code § 3301 et seq. [and] California Civil Code § 2924 et seq.," but have not identified

28  which elements of the foreclosure process violated which specific provisions of those statutes.

United States District Court

For the Northern District of California

1   Without more specific factual allegations as to what Wells Fargo did or did not do, the court cannot

2   engage in the factor by factor analysis to determine whether special circumstances existed to create

3   Wells Fargo's duty of care with respect to Plaintiffs that was then breached by Wells Fargo's

4   actions.  As leave to amend must be freely given unless futile, the negligence claim as to Wells

5   Fargo is dismissed with leave to amend.

6           **ii)  Negligence as to Rothfuss**

7           Plaintiffs allege that  Rothfuss, "acting as [Gregory] Pickett's counsel . . . had a duty to

8   exercise reasonable care and skill in the performance of [her] duties, including refraining from

9   taking any action or omission against Plaintiffs that facilitated the wrongful and fraudulent actions of

10  the other Defendants.  In taking the actions alleged [] and in failing to take the actions as alleged . . .

11  Defendant Rothfuss breached [her] duties of care and skill."  Complaint at ¶¶ 69-70.  This allegation

12  and the other scant allegations against Rothfuss in the Complaintamount to no more than a formulaic

13  recitation of the elements of a cause of action and cannot support the negligence claim.  Plaintiffs

14  have not pled facts establishing a relationship between them and Rothfuss that would give rise to her

15  obligation to inform of any fraudulent scheme—notwithstanding that the Complaint does not allege

16  even that she knew of any such scheme.  As discussed above, an attorney has no duty to protect the

17  interests of a party adverse to her client in a real estate transaction.  *Fox*, 181 Cal. App. 3d at 961.

18          Plaintiffs return to their position that an implied attorney-client relationship was formed

19  between Plaintiffs and Rothfuss such that Rothfuss had a duty to set the terms of the Purchase

20  Agreement and to contact the lender to delay the foreclosure sale.  For the reasons previously stated,

21  the allegations do not support a plausible theory for the creation of such an attorney-client

22  relationship.  Accordingly, the negligence claim as to Rothfuss is dismissed without leave to amend.

23  **D. Conspiracy**

24          Plaintiffs' fourth cause of action asserts "civil conspiracy to commit fraud" against all

25  Defendants.

26          "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons

27  who, although not actually committing a tort themselves, share with the immediate tortfeasors a

28  common plan or design in its perpetration."  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.

United States District Court
For the Northern District of California

4th 503, 510-11 (1994).  "Standing alone, a conspiracy does no harm and engenders no tort liability.
It must be activated by the commission of an actual tort.  A civil conspiracy, however atrocious,
does not per se give rise to a cause of action unless a civil wrong has been committed resulting in
damage."  *Id.* (quotations omitted).   If the party against whom the conspiracy claim is alleged is not
liable for the underlying tort, it may not be held liable for the conspiracy claim.  *Id.*

The elements of civil conspiracy are the "formation and operation of the conspiracy and
damage resulting to plaintiff from an act or acts done in furtherance of the common design."
*Applied Equip.*, 7 Cal. 4th at 511.  "The conspiring defendants must also have actual knowledge that
a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose."  *Kidron
v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582, 47 Cal. Rptr. 2d 752 (Cal. Ct. App. 1995).
In addition, "[k]nowledge of the planned tort must be combined with intent to aid in its
commission."  *Id.*  ("Mere association does not make a conspiracy.  There must be evidence of some
participation or interest in the commission of the offense."); *see also People v. Marks* (1988) 45
Cal.3d 1335, 1345, 248 Cal. Rptr. 874 ("Conspiracy requires a dual specific intent: (a) the intent to
agree, or conspire, and (b) the intent to commit the offense, which is the object of the conspiracy.")
(citations omitted).  "This rule derives from the principle that a person is generally under no duty to
take affirmative action to aid or protect others."  *Kidron*, 40 Cal. App. 4th at 1582.  A civil
conspiracy to commit fraud requires knowledge of a scheme to defraud plaintiff and intentional
joinder in the fraudulent scheme for the purpose of injuring plaintiff.  *Id.* (citations omitted).

### i) Conspiracy as to Wells Fargo, Rothfuss, and Penny Jane Pickett

As discussed above, a civil conspiracy claim is not an independent cause of action but a
theory of tort liability.  Thus, because the court finds that the Complaint does not state tort causes of
action (i.e. negligence and fraud-based claims) against Wells Fargo, Rothfuss, or Penny Jane Pickett,
it also does not state a theory of civil conspiracy as to those torts.  In any event, the Complaint also
does not allege facts meeting all of the elements of a theory of conspiracy to commit fraud because it
does not allege that Wells Fargo, Rothfuss, or Penny Jane Pickett had actual knowledge that a tort
was planned or that they concurred in the tortious scheme.  In addition, Plaintiffs presented no
argument against Rothfuss' contention that the conspiracy claim against her is barred by California's

United States District Court

For the Northern District of California

1   "agent's immunity rule," which establishes that "an agent is not liable for conspiring with the

2   principal when the agent is acting in an official capacity on behalf of the principal." *Pavicich v.*

3   *Santucci,* 85 Cal. App. 4th 382, 394, 102 Cal. Rptr. 2d 125 (Cal. Ct. App. 2000).  Plaintiffs presented

4   no argument in response to arguments against the sufficiency of the allegations supporting civil

5   conspiracy against these Defendants, so accordingly these claims are deemed abandoned and

6   dismissed without leave to amend with respect to Wells Fargo, Rothfuss, and Penny Jane Pickett.

7   **ii) Conspiracy as to Gregory Pickett and White**

8   Gregory Pickett and White's only argument against the sufficiency of the conspiracy

9   allegation is that the underlying fraud claims are insufficiently stated.  Because those underlying

10   fraud claims were sufficiently pled, the motion to dismiss the conspiracy allegations as to Gregory

11   Pickett and White is denied.

12   **E.  Unjust Enrichment**

13   Unjust enrichment requires receipt of a benefit and unjust retention of the benefit at the

14   expense of another.  *First Nationwide Savings v. Perry,* 11 Cal. App. 4th 1657, 1662–63, 15 Cal.

15   Rptr. 2d 173 (Cal. Ct. App. 1992).  California courts "appear to be split on whether unjust

16   enrichment can be an independent claim or merely an equitable remedy."  *Falk v. General Motors,*

17   *Corp.,* 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).  "For example, the court in *Melchior v. New*

18   *Line Productions, Inc.,* 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003), held

19   that unjust enrichment 'does not describe a theory of recovery, but an effect: the result of a failure to

20   make restitution under circumstances where it is equitable to do so.'  In contrast, the court in

21   *Ghirardo v. Antonioli,* 14 Cal. 4th 39, 50 (1996), held that plaintiffs may state a claim for unjust

22   enrichment particularly where their claim seeks restitution where other remedies are inadequate."

23   *Fammilop v. Wells Fargo Bank, N.A.*, No. 10-cv-5977 AHM FFMX, 2011 WL 61614 at *5 (C.D.

24   Cal. Jan. 4, 2011).

25   **i) Unjust Enrichment as to Wells Fargo, Rothfuss, and Penny Jane Pickett**

26   The Court does not decide here whether unjust enrichment may be an independent claim or is

27   merely an equitable remedy. Assuming, *arguendo,* that unjust enrichment is an independent claim,

28   Plaintiffs have nonetheless failed to state such a claim against Wells Fargo, Rothfuss, or Penny Jane

27

1   Pickett, because Plaintiffs have failed to state facts alleging that these Defendants have unjustly

2   retained benefits at the expense of Plaintiffs.  Plaintiffs presented no argument in response to these

3   Defendants' arguments against the sufficiency of the allegations supporting unjust enrichment

4   against these Defendants, so accordingly these claims are deemed abandoned and dismissed without

5   leave to amend with respect to Wells Fargo, Rothfuss, and Penny Jane Pickett.

6   **ii)  Unjust Enrichment as to Gregory Pickett and White**

7   Gregory Pickett and White's only argument against the sufficiency of the unjust enrichment

8   claim is that the underlying fraud claims are insufficiently stated.  Because those underlying fraud

9   claims were sufficiently pled, the motion to dismiss the unjust enrichment claim as to Gregory

10  Pickett is denied.  However, because Plaintiffs have failed to allege how White was unjustly

11  enriched by the allegedly fraudulent scheme, the unjust enrichment claim as to her is dismissed with

12  leave to amend.

13  ## IV.  CONCLUSION

14  For the reasons stated above, the court orders the following:

15  All claims against Wells Fargo are dismissed and its motion to dismiss is granted.  Plaintiffs

16  are granted leave to amend the wrongful foreclosure and negligence claims against Wells Fargo.

17  All claims against Rothfuss are dismissed and her motion to dismiss is granted without leave

18  to amend.

19  The Pickett MTD is granted with respect to the following: all claims against Penny Jane

20  Pickett are dismissed.  As to Gregory Pickett, the constructive fraud, quiet title, slander of title, and

21  cancellation of instruments claims are dismissed.  As to White, the constructive fraud, quiet title,

22  slander of title, cancellation of instruments claims, and unjust enrichment claims against Defendant

23  White are dismissed. The remaining claims against Gregory Pickett are for fraud, fraudulent deceit,

24  conspiracy, and unjust enrichment.  The remaining claims against White are for fraud, fraudulent

25  deceit, and conspiracy.  Plaintiffs are granted leave to amend the quiet title claim as to the Pickett

26  Defendants, and the unjust enrichment claim as to White.  The Pickett MTD is otherwise denied.

27  //

28

United States District Court

For the Northern District of California

1

2      Plaintiffs must file an amended complaint by **October 17, 2013**.

3      IT IS SO ORDERED.

4   Dated:  October 3, 2013

5                                                DONNA M. RYU
                                                United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28